United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA LYNN COFFMAN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 4:16-cv-00101-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 19 |

Plaintiff Jessica Lynn Coffman seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On December 16, 2011, Plaintiff Jessica Lynn Coffman filed a Title II Disability Insurance ("DI") Benefits application. Administrative Record ("AR") 67, 303. Plaintiff's application alleges a disability onset date of May 27, 2011. AR 303. Plaintiff's claim was denied on May 4, 2012. AR 194-198. Plaintiff's Request for Reconsideration was denied on February 13, 2013. AR 201-207. A hearing was held by videoconference before Administrative Law Judge Nancy M. Stewart on April 21, 2014. AR 67-80.

Plaintiff is thirty-three years old and lives with her husband and two children. AR 93-94, 303. Plaintiff has not been engaged in substantial gainful activity since May 27, 2011. AR 69.

Plaintiff has a bachelor's degree in history. AR 91, 538. At the hearing, Plaintiff testified that she had previously worked as a program assistant managing computer and weapons systems for a defense contractor, worked as a program assistant performing predominantly secretarial work, and also had retail experience. *See* AR 91, 100-103.

Plaintiff reportedly began treatment with medication for multiple sclerosis when she was a junior in high school. AR 642. Plaintiff obtained care from neurologist Jody Corey-Bloom, MD, Ph.D from July 2010 to April 2014, who also noted that Plaintiff had depression. AR 435-436, 542-533, 559-561, 713-722.

On December 20, 2012, Kenneth Stover, D.O. performed a consultative neurological assessment, during which Plaintiff's chief complaint was multiple sclerosis. AR 615-619. Dr. Stover diagnosed Plaintiff with multiple sclerosis, relapsing and remitting, and 18 months gestation. AR 617. He opined that Plaintiff was currently in remission and had no limitations in standing, walking, lifting, carrying, sitting, pushing, or pulling, stooping, kneeling, or crouching. AR 618. He further stated that she could climb stairs, ramps, and perform unprotected balancing, but that she was frequently functionally limited in the use of scaffolds, ropes, and ladders, but had no functional limitations in stooping, kneeling, crouching, or manipulative limitations in reaching, handling, and fingering. *Id*. Dr. Stover opined that Plaintiff may have limitations during exacerbations of her condition. *Id.* She had no visual or communicative functional limitations. AR 619-620.

On April 12, 2012, Colette Valette, Ph.D performed a consultative psychological examination. AR 538-540. Dr. Valette noted that Plaintiff's chief complaints were multiple sclerosis, extreme physical fatigue, weakness, and anxiety. AR 358. Plaintiff also reported slow cognitive processing, and difficulty putting words to her thoughts. *Id.* Dr. Valette noted that Plaintiff became more fatigued as the evaluation progressed, and, at the end, her eyes appeared glassy. AR 538-539. Dr. Valette administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), which revealed a Verbal Comprehension Index of 105 (average range), a Perception Reasoning Index Score of 90 (average range), a Working Memory Index Score of 95 (average range), a Processing Speed Index Score of 62 (deficient range), and a Full Scale I.Q. of

87 (low average range). AR 539. Despite Plaintiff's deficient processing speed, Dr. Valette estimated that Plaintiff was intellectually functioning in the average range. *Id.* Dr. Valette opined that Plaintiff would not require supervision, but that it would be difficult for her to sustain an ordinary routine for an eight-hour workday in order to complete simple, detailed, and complex tasks due to extreme fatigue and the symptoms of multiple sclerosis. AR 539-540. Dr. Valette further opined that Plaintiff had marked limitations in her ability to concentrate in two-hour increments. AR 540.

On May 4, 2012, State Agency medical consultant Eric Weiner, Ph.D. performed a psychiatric review of Plaintiff's medical records and assessed her mental functional capacity. AR 160-173. Dr. Weiner diagnosed Plaintiff with multiple sclerosis and an affective mood disorder, and opined that Plaintiff experienced mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. AR 166. Dr. Lee did an accompanying physical functional capacity report and confirmed that Plaintiff had multiple sclerosis and affective mood disorder, but retained the residual function capacity to perform jobs that exists in significant numbers in the national economy. AR 172, 174.

On February 13, 2013, State Agency medical consultant Elizabeth Covey, Psy.D performed a psychiatric review of Plaintiff's medical records and assessed her mental functional capacity. AR 183-185, 188-189. Dr. Covey found that Plaintiff experienced limitations in sustained concentration and persistence. AR 188. She also determined that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, moderately limited in her ability to carry out detailed instructions, and moderately limited in her ability to maintain attention and concentration for extended periods. *Id.* Dr. Covey found that Plaintiff was not significantly limited in terms of: her ability to perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to sustain an ordinary routine without special supervision; her ability to work in coordination with others without being distracted by them; and her ability to make simple, work-related decisions. *Id.* Dr. Covey found that Plaintiff's ability to complete a normal workday and workweek without interruption from

3

psychologically-based symptoms would be moderately limited. *Id.* Dr. Covey noted that Plaintiff's sustained concentration and persistence limitations would limit her to simple, repetitive tasks with brief lapses of focus in a low demanding work environment. *Id.*

On January 7, 2013, Dr. Brodsky, D.O., in considering the entire medical record, opined that Dr. Valette's medical opinion overestimated Plaintiff's restrictions and limitations, because it was only based on a snapshot of her functioning. AR 189.

On May 20, 2014, the ALJ issued her decision finding that Plaintiff was not disabled. AR 67-80. On July 18, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 60-62. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on November 10, 2015. AR 1-7. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On July 18, 2016, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 18.). On August 15, 2016, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 19.) Plaintiff did not file a reply, so the motions are fully briefed.

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated

according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016. AR 69.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 27, 2011, the alleged onset date. AR 69.

At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis and depression. AR 69.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination

of impairments that met or equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 69.

Before considering step four, the ALJ concluded that Plaintiff has the RFC to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a), except that she can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. AR 71. Plaintiff can also stand and walk for two hours out of an eight-hour workday, except that she cannot do prolonged walking for more than 15 minutes at a time, and she can sit for six hours out of an eight-hour workday. *Id.* Plaintiff cannot climb ropes, ladders or scaffolds; she cannot work in hazardous conditions, such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles. *Id.* She cannot perform work that requires hypervigilance or work where she watches for the safety of others. *Id.* She is limited to unskilled work, and a work environment that is static. *Id.* She cannot perform fast-paced work, and she is limited to frequent handling and fingering. *Id.*

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 78.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 78-79. Therefore, Plaintiff was not disabled within the meaning of the Social Security Act. AR 79.

## IV. DISCUSSION

Plaintiff makes two arguments in her motion for summary judgment: (1) that the ALJ rejected her consultative medical examiner's opinion without providing specific and legitimate reasons supported by medical evidence; and (2) that the ALJ erred when she assigned great weight to the non-examining physicians. (*See* Pl.'s Mot. at 7, 9.)

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes between the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three categories are as follows: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who

neither examine nor treat the claimant (nonexamining physicians). *Id.* at 830. Generally, more weight should be given to the opinion of the treating physician than to the opinion of doctors who do not treat the claimant. *Id.* The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor and, if contradicted, only for specific, legitimate reasons supported by substantial evidence. *Id.* Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

**A.      The ALJ properly discounted the opinion of examining medical source Dr. Valette.**

Plaintiff argues that the ALJ's rationale for discounting Dr. Colette Valette's medical opinion was without specific and legitimate reasons. (Pl.'s Mot. at 7.) If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

On April 12, 2012, Dr. Valette performed a consultative neurological examination while Plaintiff was suffering a relapse of her MS. AR 538-540. Dr. Valette noted that Plaintiff's chief complaints were multiple sclerosis, extreme physical fatigue, weakness, and anxiety. AR 358. Dr. Valette noted that Plaintiff became more fatigued as the evaluation progressed, and, at the end, her eyes appeared glassy. AR 538-539. While Plaintiff's WAIS-IV results showed that her processing speed was in the deficient range, Dr. Valette still estimated that Plaintiff was intellectually functioning in the average range. AR 539. Dr. Valette opined that, due to extreme fatigue and other symptoms of MS, Plaintiff would experience difficulty in sustaining an ordinary routine for an eight-hour workday. AR 539-540. Dr. Valette further opined that Plaintiff had marked limitations in her ability to concentrate in two-hour increments. AR 540.

The ALJ provides several reasons why she declined to give Dr. Valette's opinion great weight. AR 74. These reasons will be discussed below.

### i. Examination was a snapshot

Plaintiff contends that the ALJ erred by discounting the opinion, because she impermissibly characterized it was a "snapshot." (Pl.'s Mot. at 7.) While Plaintiff is correct that the mere characterization of a snapshot without any other information would be in error, the ALJ explained what she meant using the term. In fact, the ALJ notes that the examination itself is not consistent with the overall evidence, which shows that Plaintiff "perseveres at many activities." AR 74. The undersigned also notes that the State Agency review physicians also characterized the report as being a snapshot, presumably because it was a single day while Plaintiff was in relapse. *See* AR 171, 189. Then the ALJ immediately and accurately stated that Dr. Valette is not an expert in MS, so, taken in context, the undersigned presumes that the ALJ meant that Dr. Vallete's observations on a single day cannot apply to Plaintiff on other days. Thus, the ALJ did not err by simply characterizing Dr. Valette's opinion as a "snapshot."

### ii. Plaintiff's processing speed

Plaintiff argues that the ALJ erred in discounting Dr. Valette's opinion because she did so by impermissibly interpreting the raw data. (Pl.'s Mot. at 7.) Specifically, Plaintiff argues that the ALJ made a medical finding when she discounted the deficient processing score on the grounds that "she managed to finish the tests." (Pl.'s Mot. at 8; AR 74.) What Plaintiff does not address, however, and which the ALJ noted, is that Dr. Valette also opined that, despite her processing deficiency, Plaintiff's overall intellectual functioning was in the average range. AR 74, 539.

Thus, the Court finds that the ALJ did not impermissibly interpret raw medical data, because she cited to Dr. Valette's own findings.

### iii. General discounting based on specialty

Lastly, Plaintiff argues that the ALJ did not provide an adequate explanation for discounting Dr. Valette's opinion, in part, on the grounds that she is not a medical doctor. (Pl.'s Mot. at 8.) The ALJ noted that Dr. Valette is a clinical psychologist, rather than an expert in internal medical or multiple sclerosis, rendering "[h]er opinions regarding fatigue and symptoms related to multiple sclerosis [beyond] her field of study." AR 75. Even still, Plaintiff contends that even if the limitations noted are beyond her expertise, it "does not constitute a basis to reject Dr.

8

Valette's opinion regarding [Plaintiff's] ability to sustain concentration for at least two-hour increments at a time in order to maintain a regular work schedule. *(*Pl.'s Mot. at 8 (citing AR 540).) This, however, misstates the ALJ's decision, which merely did not afford great weight to Dr. Valette's opinion, because Dr. Valette's training and expertise did not extend to symptoms of MS and how those disease-specific symptoms impact concentration over the course of an extended period of time. Instead, all Dr. Valette observed was how Plaintiff performed on a single day while in relapse.

Accordingly, the ALJ did not err in assigning little weight Dr. Valette's opinion.

### B. The ALJ did not err in assigning great weight to non-examining physicians.

Plaintiff argues that the ALJ's assignment of great weight to the non-examining physicians is not substantial evidence supporting the ALJ's decision. (Pl.'s Mot. at 9.) As an initial matter, the ALJ cited to several other medical opinions in her determination that Plaintiff was not as limited as Dr. Valette's opinion suggested. *See* AR 73-78. In fact, Plaintiff reported to the consulting neurologist that she could walk 1 1/2 to 2 miles with some fatigue at the end. AR 73, 617. Thus, Plaintiff's own self-reporting contradicts Dr. Valette's opinion regarding the severity of her symptoms. *See* AR 617.

Plaintiff further contends that "the State Agency opinions were based primarily on the same test results Dr. Valette recorded and merely represented a difference in interpretation." (Pl.'s Mot. at 9.) The ALJ noted that the State Agency review psychiatrists concluded that Plaintiff had a severe affective disorder, which caused mild limitations in activities of daily living and social functioning, moderate limitations in concentration, persistence, or pace, and no episodes of decompensation, which limited her to simple, repetitive tasks with brief lapses of focus in a low-demanding work environment. AR 78, 166-167, 184-186. In opposition, Defendant argues that Plaintiff's characterization is inaccurate, because Drs. Weiner and Covey reviewed the entire record, and based their opinions on various other factors, including the fact that Plaintiff presented normal clinical findings on other office visits, Plaintiff's demanding activities of daily living, and that she did not take any psychotropic medication. (Def.'s Opp'n at 7 (citing AR 78, 167, 184-186.) The Court agrees, because the State Agency review psychiatrists listed the records they

9

reviewed, and explicitly noted their disagreements with the various medical opinions. AR 166-167, 184-186. Thus, the ALJ did not err in assigning great weight to the non-examining opinions.

In light of the foregoing, the ALJ's assessment of the conflicting medical opinion evidence was proper and supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: September 22, 2017

KANDIS A. WESTMORE
United States Magistrate Judge